**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BERNARD K. BOX, doing business as Centex Agricultural Supply, and PATSY L. BOX, | § | |
| Debtors, | § | |
| VS. | § | CIVIL ACTION NO. 05-2001 |
| FIRST STATE BANK, BREMOND S.S.B., | § | |
| Appellant. | § | |

**MEMORANDUM AND OPINION**

The First State Bank, Bremond S.S.B. ("Bank") appeals from the bankruptcy court's order denying the motion for relief from the stay imposed after Bernard K. Box and Patsy Box filed for bankruptcy under Chapter 7. The Boxes had obtained a home-equity loan from the Bank and used the loan proceeds to repay part of an unsecured preexisting debt also owed to the Bank. The bankruptcy court held that the lien was invalid because the Bank had "required" the borrower to use the home-equity loan proceeds to repay the preexisting debt, violating the Texas Constitution. Based on a careful review of the briefs, the record, and the applicable law, this court affirms the bankruptcy court's order. The reasons are set out below.

## I. Background

The bankruptcy court carefully considered testimony from Bernard Box and from the Bank's senior vice-president, Kenneth Swick, along with the loan application and documents.

The evidence was not disputed. Box had been a Bank customer for over 15 years and had obtained several loans to support his business. In August 2003, Box liquidated his business to pay off creditors. He owed $300,000 to the Bank but was able to pay only about $200,000, leaving an unsecured debt of $107,000. Although the Bank intended to sue Box on the unpaid debt because it had an obligation to "seek recourse on any debt that's owed the bank," (Tr. at 31), Swick did not believe that Box had assets to satisfy any judgment that might result. Box testified that although he had some property, it was of uncertain value. The record shows that the Boxes had no unpledged, nonexempt assets at risk to a potential judgment creditor, such as the Bank.

Box wanted to preserve his ability to borrow money from the Bank in the future; the Bank wanted to avoid charging off the loan. Swick suggested that the Boxes consider a home-equity loan to shore up the preexisting debt. Swick testified that because home-equity loans were "newly fresh in Texas," he urged Box to consult an attorney and even "go to another lender." (Tr. at 24). Two to three weeks later, Box decided to take out a home-equity loan. He and his wife signed the documents but on October 30, 2003, took advantage of the statutorily-provided opportunity to rescind because the interest rate terms were incorrect. On November 13, 2003, the interest rate issues resolved, the Boxes closed the loan.

Recent amendments to the Texas Constitution allow a home-equity loan. Article XVI, § 50(6) specify the requirements for a valid loan. Two provisions are at issue here. Section 50(a)(6)(A) states:

> [t]he homestead . . . is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that is secured by a voluntary lien on the homestead.

Section 50(a)(6)(Q)(i) prohibits a lender from requiring the homestead owner to apply loan proceeds to pay another debt owed to the same lender. It states:

> The homestead . . . shall be, and is hereby protected from the forced sale, for the payment of all debts except for . . . an extension of credit that. . .is made on condition that . . . the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender.

Box testified that he was not forced to take out the home-equity loan. Rather, he did so to maintain a good relationship with the Bank, hoping to obtain future loans. (Tr. at 47). Although Box testified that he felt "pressure," citing the small town in which he lived and the fact that he did not come up with the home-equity loan idea, the record amply supports the bankruptcy court's finding that the Boxes voluntarily agreed to the home-equity loan, giving the Bank a lien against their homestead to collateralize the prior unsecured debt. This finding does not rest on statements to that effect in the credit application and loan documents the Boxes signed, but rather on the testimony Box gave about why he agreed to take out the home-equity loan on the terms offered.

The credit application the Boxes signed contained a statement that the purpose of the loan was for "debt," referring to the unsecured debt he owed to the Bank. The parties agree that in this application, the Boxes agreed that the home-equity loan proceeds would go directly to the Bank, to be applied against the preexisting debt they owed to the same lender. The closing statement shows that the Boxes did not receive any of the proceeds. Rather, the Bank applied the proceeds to the Boxes' preexisting unsecured debt. The Boxes voluntarily agreed to this term. When they executed the loan documents, they signed affidavits and documents stating that a condition of the loan was that they were not *required* to apply the proceeds to another debt to the same lender. The bankruptcy court nonetheless found that the Bank "required" the Boxes to use the proceeds to pay the prior debt, making the loan invalid. The bankruptcy court based this legal conclusion on the finding that the Bank would not have made the home-equity loan to the Boxes unless they agreed to apply the proceeds to the preexisting debt owed to the Bank. The court concluded that the Bank therefore "required" the Boxes to apply the loan proceeds to the prior debt as a condition of extending the loan, in violation of Article XVI, § 50(a)(6)(Q)(i) of the Texas Constitution.

In this appeal, the Bank agrees that both it and the Boxes "understood that the purpose of the loan . . . was to pay the Bank on its existing debt." (Docket Entry No. 2 at 3). The Bank agrees that it would not have made the loan unless it received the proceeds. The Bank argues it did not require the Boxes to use the proceeds to repay the prior debt because the Boxes voluntarily agreed to this term. The issue is whether section 50(a)(6)(Q)(i) allows a borrower voluntarily to agree to use home-equity loan proceeds to repay a prior unsecured

debt to the same lender if the loan would not have been made unless the borrower agreed to this restricted use.

## II. Analysis

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). A bankruptcy court's findings of fact remain unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re McDaniel*, 70 F.3d 841, 842–43 (5th Cir. 1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *In re McDaniel*, 70 F.3d at 843. Legal conclusions are reviewed *de novo*. *Id.*; *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993). The issue on this appeal is the bankruptcy court's legal conclusion that if a lender would not have made a home-equity loan to a borrower unless the borrower agreed to use the proceeds to repay a prior debt to the same lender, the lien is invalid under Art. XVI, § 50(a)(6)(Q)(i) of the Texas Constitution.

As a general rule, property occupied as a homestead cannot be subjected to forced sale to pay debts other than those excepted by the Constitution. TEX. CONST. art. XXVI, § 50. The Constitution was amended in 1997 to allow Texas consumers to borrow against the equity built up in their homes with homestead-secured debt. Any attempt to create a lien or mortgage on homestead property is void unless it falls under one of the exceptions provided in the Texas Constitution. TEX. CONST. art. XVI, § 50; *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991). The Texas Supreme Court has described the amendments

as follows:

> The amendment's purpose was to expand the types of liens for loans that a lender, with the homeowner's consent, could place against a homestead. The amendment allows homeowners who have either entirely repaid their home loans or who have accumulated equity in their homestead over and above existing liens to apply for a loan against that equity. The first part of the amendment details the terms and conditions of a loan and the rights and obligations of both a borrower and the home-equity lender. *See* TEX. CONST. art. XVI, § 50(a)(6)(A)–(Q). It includes section 50(a)(6)(Q)(i), which provides that a home-equity lender cannot require a borrower to apply the loan proceeds "to repay another debt except debts secured by the homestead or debt to another lender."

*Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 354 (Tex. 2000).

The bankruptcy court concluded that if the lender would not have made the home-equity loan unless the borrower agreed to use the proceeds to repay an unsecured debt owed to the same lender, the lien is invalid because the lender is "requiring" the borrower to use the proceeds for repayment. The bankruptcy court found that despite the borrower's voluntary agreement to the loan on these terms, the lien was invalid because the unrestricted use of the proceeds was a condition for making the loan in the first place. The Bank urges that this interpretation is inconsistent with the constitutional language and its interpretation by regulatory agencies authorized to do so.

The Texas Supreme Court has repeatedly instructed that, in interpreting the Texas Constitution, courts must "rely heavily on its literal text and must give effect to its plain language" to assure that constitutional provisions are given "the effect their makers and adopters intended." *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001);

*accord Stringer*, 23 S.W.3d at 355. The bankruptcy court properly noted that section 50(a)(6)(a) and section 50(a)(6)(Q)(i) had to be read together. The first section states that a home-equity loan must be a "voluntary lien." The debtor must voluntarily agree to use the homestead to secure the loan. The bankruptcy court reasoned that the "not required" in section 50(a)(6)(Q)(i) had to mean something other than the voluntary agreement referred to in section (a), or the two sections would be redundant. The bankruptcy court concluded that section (a) referred to the debtor's agreement and section (Q)(i) referred to the lender's requirement. As a result, even if the debtor voluntarily agrees to use the loan proceeds to pay a preexisting debt to the lender, the lien is invalid if the lender would not otherwise have made the loan.

Section (a) does focus on the debtor, but it focuses on whether the debtor voluntarily agrees to use his homestead as the security for the loan. Section (Q)(i) does focus on the lender, but it refers to the loan terms that can validly be made when the homestead provides the security. Reading the section (Q)(i) language—that a home equity lender cannot require a debtor to use the proceeds to repay a preexisting debt—to allow a debtor voluntarily to agree to use the proceeds to pay a preexisting debt does not make section (a) redundant. Taken together, they require that the debtor must voluntarily agree to use his homestead as collateral; and to use the proceeds to repay the prior loan. This interpretation gives both sections meaning, but does not answer the question whether the borrower's voluntary decision to using his homestead as collateral and voluntary agreement to using the proceeds to repay a prior debt owed to the same lender means that the Bank did not "require" the

borrower to use the proceeds in this restricted fashion when the Bank only made the loan because the borrower agreed to the restriction.

The interpretations given to section (Q)(i) by the regulatory agencies are instructive. Article XVI, § 50(u), authorized the legislature to delegate one or more state agencies the power to interpret subsections (a)(5)-(a)(7) and provided a safe harbor under such interpretations:

> An act or omission does not violate provision included in those subsections if the act or omission conforms to an interpretation of the provision that is: (1) in effect at the time of the act or omission; and (2) made by a state agency to which the power of interpretation is delegated . . . .

TEX. CONST. art XVI, § 50(u).

The Texas legislature revised Chapter 11 of the Texas Finance Code to allow the Texas Finance Commission to interpret the home-equity loan constitutional provisions. TEX. FIN. CODE ANN. § 11.308. Although these interpretations did not become effective until January 8, 2004, too late to apply to the Boxes' loan, which closed on November 16, 2003, they are nonetheless instructive. The Texas and federal courts recognize that the Regulatory Commentary on Equity Lending Procedures, an interpretive document drafted by several Texas agencies, has persuasive value in interpreting provisions setting out the substantive rights and obligations of home-equity lenders and borrowers. *Pelt v. U.S. Bank Trust Nat'l Ass'n*, 359 F.3d 764 (5th Cir. 2004). The Finance Commission has issued the following interpretation of section 50(a)(6)(Q)(i):

> **§ 153.18. Limitation on Application of Proceeds: Section 50(a)(6)(Q)(i).** An equity loan must be made on the condition that the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender.
>
> (1) An owner may use the proceeds of an equity loan for any purpose. An owner is not precluded from voluntarily paying off a debt that is owed to the same lender.
>
> (2) The lender may not require an owner to repay a debt owed to the lender, unless it is a debt secured by the homestead. The lender may require debt secured by the homestead or debt to another lender or creditor be paid out of the proceeds of an equity loan. The lender may not otherwise specify or restrict the use of the proceeds.
>
> (3) When an owner applies for a debt consolidation loan, it is the owner, not the lender, that is requiring that proceeds be applied to another debt. If the proceeds of a home equity loan are used in conformity with owner's credit application, the limitations of this section do not apply.

7 TEX. ADMIN. CODE § 153.18(1)–(3) (2004).

The provision repeats section 50(a)(6)(Q)(i): a home-equity loan must be made "on the condition" that the debtor is "not required" to apply the proceeds to repay a preexisting debt owed to the same lender. In this case, the loan documents included recitations to that effect. As the bankruptcy judge pointed out, such recitals, by themselves, are inadequate to make the lien valid if other evidence in the record shows that the lender did require the borrower to use the home-equity loan proceeds to repay a prior unsecured debt owed to the same lender. In this case, the lender concedes that despite the statements in the loan documents that the loan was not conditioned on requiring the debtor to apply the proceeds

to the preexisting debt, this term was a condition of making the loan. The Bank concedes that "[t]here would have been no loan had the proceeds not been paid to the Bank." (Docket Entry No. 2 at 8).

The interpretation continues to explain the circumstances under which a borrower may use the home-equity loan proceeds to repay a debt owed to the same lender without invalidating the lien. Paragraph (1) recognizes that an owner may use loan proceeds for any purpose and is "not precluded from voluntarily paying off a debt that is owed to the same lender." This paragraph does not state that it is permissible for the lender to condition the loan on the borrower's agreement to use the proceeds to repay unsecured debt owed to the same lender. Paragraph (2) makes this distinction clear: "The lender may not require an owner to repay a debt owed to the lender, unless it is a debt secured by the homestead. The lender may require debt secured by the homestead or debt to another lender or creditor be paid out of the proceeds of an equity loan. The lender may not otherwise specify or restrict the use of the proceeds." The undisputed evidence in this case showed that the lender restricted the borrower's use of the home-equity loan proceeds—to repay the existing unsecured debt owed to the same lender—when it agreed to make the loan only if the borrower specified this use.

The Bank argues that because the borrower voluntarily agreed to use the loan proceeds to pay off the preexisting debt, and so specified in the loan application, the lien is consistent with, and permitted by, Paragraph (3). This paragraph states that when an owner applies for a specific type of loan—a "debt consolidation loan"—the "owner, not the lender,

. . . is requiring that proceeds of a home equity loan be applied to another debt." The provision continues: "If the proceeds of a home equity loan are used in conformity with the owner's credit application, the limitations of this section do not apply." The Bank argues that, contrary to the bankruptcy judge's conclusion, this second sentence does not apply only to a debt consolidation loan application. According to the Bank, any time the borrower specifies in the credit application that loan proceeds are to repay existing debt owed to the same bank, that is valid under section 50(6)(Q)(i) of the Texas Constitution.

Paragraph (3), by its terms, applies only "when an owner applies for a debt consolidation loan." A "debt consolidation loan" is the replacement of multiple loans with a single loan, often with a lower monthly payment and a longer repayment period.[1] Because such a loan combines existing debt and arranges for its repayment, it necessarily requires using the new loan proceeds to repay existing debt. The lender does not require this use of the loan proceeds as a condition for its willingness to make a particular loan; rather, it is an inherent feature of any debt-consolidation loan. The second sentence of Paragraph (3) states that "[i]f the proceeds . . . are used in conformity with the owner's credit application, the limitations of this section do not apply." The second sentence of Paragraph (3), by its terms, is limited to an owner's debt-consolidation loan application. The first sentence begins, "[w]hen an owner applies for a debt consolidation loan," and the second sentence refers back to proceeds used in conformity with "the" application. The only credit application referred

[1] *See* Bankrate's Financial Glossary, http://www.bankrate.com/brm/definitions.asp?Page=2&channelId=30&slid=1& termUid=1667 (last visited Mar. 8, 2006).

to is a debt-consolidation loan application. Paragraph (3) states that other than the specified circumstance of using home-equity loan proceeds in conformity with an owner's debt-consolidation loan credit application, the "limitations of this section" apply. Those limitations are that the lender cannot require a homestead owner to use the home-equity loan proceeds to repay existing unsecured debt owed to the same lender. "Require" in this context means that the lender cannot condition the loan on the borrower's agreement to restrict the use of the proceeds to repay such existing debt. The exception recognized in Paragraph (3) is that if the loan is a debt consolidation loan, and in the credit application the borrower specifies that the proceeds are to repay the existing debt, this limit does not apply and the borrower's voluntary agreement to the requirement results in a valid lien. The Boxes' loan does not fall into the exception. The Bank did not contend that it was a debt consolidation loan. And the Bank admitted that it would not have made the loan unless the Boxes had agreed to use the proceeds to repay the Bank's prior unsecured loan. The fact that the borrower—the Boxes—voluntarily agreed to accept the loan on these terms does not erase the fact that the Bank required their agreement as a condition of making the loan.

The Bank argues that the practical effect of this interpretation is to extend the constitutional limit to preclude a home-equity borrower from using the loan proceeds to satisfy existing debt to the home-equity lender, despite the clear intent to allow a borrower to use the proceeds voluntarily to pay off such debt. The Bank's argument proves too much. When, as here, the record contains undisputed evidence that the lender would not have made the home-equity loan unless the homestead owner agreed to restrict the proceeds to repaying

prior unsecured debt owed to the same lender, the lender is "requiring" this restricted use of the proceeds. If, on the other hand, the Bank had presented evidence that it was willing to make the loan even if the proceeds had been paid directly to the borrower, without restriction, the fact that the borrower agreed to use the proceeds to repay the existing debt would not invalidate the lien.

**III. Conclusion**

Courts have previously noted problems with the drafting of article XVI, section 50 of the Texas Constitution. In *Stringer*, the Texas Supreme Court ruled that the Home Equity Amendment to the Texas State Constitution permits lenders to require that borrowers pay third-party creditors with the proceeds of a home-equity loan, even if those debts are not secured by the borrower's homestead. 23 S.W.3d at 354. The case arose because the substantive provisions of the amendment permit a lender to require that a borrower pay loan proceeds to another debt secured by the homestead or to a debt to a third-party lender. The notice that the amendment requires lenders to provide to borrowers, however, states that a lender may not require a borrower to pay the proceeds of a home-equity loan to a debt that is not secured by the homestead. In short, there was a conflict between the substantive provisions of the amendment and the notice to borrowers that the amendment required.

The Texas Supreme Court has repeatedly instructed that, in interpreting the Texas Constitution, courts must "rely heavily on its literal text and must give effect to its plain language." *Doody*, 49 S.W.3d at 344. The result reached in this case is based on the literal text and plain language of the constitutional provision at issue. The Bank's policy arguments

are best addressed by revising the text and language, which cannot be done by federal bankruptcy or district courts.

The judgment of the bankruptcy court is affirmed, and this appeal is dismissed.

SIGNED on March 9, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge